359 So.2d 644 (1978)
GERTRUDE GARDNER, INC.
v.
Shirley McNAMARA, Secretary, Department of Revenue, etc.
No. 11944.
Court of Appeal of Louisiana, First Circuit.
May 1, 1978.
Rehearing Denied June 12, 1978.
*645 William H. Reinhardt, Jr., Metairie, of counsel for plaintiff-appellant Gertrude Gardner, Inc.
Edwin M. Callaway, Baton Rouge, of counsel for defendant-appellee Shirley McNamara, Secretary Department of Revenue, Etc.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
This is a suit for the recovery of taxes paid under protest pursuant to La.R.S. *646 47:1576. The taxes were assessed under the provisions of the Louisiana Occupational License Tax, La.R.S. 47:341 et seq., for the years 1973 through 1976.
Plaintiff-appellant, Gertrude Gardner, Inc., is a Louisiana corporation with its principal place of business in Orleans Parish. It is engaged in the real estate brokerage business in the parishes of Orleans, Jefferson, St. Tammany, St. Bernard, and, for a portion of the time pertinent to the decision herein, Tangipahoa Parish.
The defendant-appellee, Collector for the Department of Revenue and Taxation (Collector), in addition to imposing the occupational license tax on commissions derived from plaintiff's main office in Orleans Parish, imposed the tax upon commissions which were allocated by the Department of Revenue to plaintiff's various branch offices. An assessment of $31,281.94 was paid under protest by plaintiff on March 22, 1977, and suit was subsequently filed for the recovery thereof on grounds that only one tax should have been assessed for all offices combined in the maximum amount required under La.R.S. 47:348.
Finding that the taxes were properly assessed as to the various branch offices on the basis of La.R.S. 47, Sections 345 and 348 of the occupational license tax, the trial court ruled in favor of the Collector holding that the taxes were not recoverable.
Plaintiff's specification of errors are:
"1. The trial court erred in holding that La.R.S. 47:345 clearly applied to La.R.S. 47:348 allowing the State Department of Revenue and Taxation to tax the various offices of a real estate brokerage business separate from the main office.
"2. The trial court erred in holding that the separate offices of plaintiff-appellant's brokerage firm were separate businesses and therefore subject to separate occupational license tax for each location.
"3. The trial court erred by ignoring the dispositive holding of State vs. Norman Mayer & Co., 170 La. 337, 127 So. 743 (1930) wherein the Supreme Court held that the separate place of business tax under the Louisiana Occupational Tax Statute did not apply to a brokerage business.
"4. The trial court erred in holding that plaintiff-appellant must bear the burden of showing that La.R.S. 47:345 does not clearly apply to La.R.S. 47:348.
"5. The trial court erred in holding that it must determine applicability of a tax on a case by case basis."
With respect to assignments of errors numbers 1, 2, 3 and 5, we concur with the trial court's finding of fact and application of law. In this regard we adopt the following quoted portion of the trial judge's Written Reasons for Judgment, to-wit:
"Plaintiff contends that the occupational license tax does not apply to the branch offices of real estate brokerage firms in that the brokerage firm is taxed as a single business no matter the number of offices maintained or wherever located. Plaintiff cites R.S. 47:348 for this contention, the pertinent portion of which is:
§ 348. Real estate brokers
`For carrying on each business known as real estate broker, the license shall be based on gross annual commissions earned for services performed by the broker or agent in Louisiana regardless of whether the principal or party solicited is within or without this state. Gross annual commissions shall include all income, earnings, and receipts from negotiating the purchase or sale of real property, procuring loans on mortgages, collecting rents, attending to the renting and leasing of houses and lands, and from other activities common to a real estate brokerage business.'
"Defendant contends that the controlling provision is R.S. 47:345, as follows:
345. Separate license required for each location and each class of business
`Except as otherwise expressly provided herein, any person taxed under this Chapter having one or more places of business shall pay a separate license for each class of business at each place.
`A separate license for each class of business at each place of business shall not be *647 required where any person has taxable annual gross sales and taxable annual gross receipts in an aggregate amount of less than five thousand dollars ($5,000.00), or has only taxable annual gross sales or taxable annual gross receipts in an amount of less than five thousand dollars ($5,000.00). Only one license shall be required for each place of business, which license shall be based upon the classification of business which constitutes the major portion of the taxable annual gross sales or taxable annual gross receipts.'
"Defendant contends that the provision is free of all ambiguity and expresses the legislature's intention clearly.
"Plaintiff advances several arguments in favor of its contention that the occupational license tax does not apply to the branch offices of real estate firms:
"First, plaintiff contends that it is the intent of the legislature to tax a real estate broker as an `occupation', as opposed to taxing separate `places of business'.
"Plaintiff's scholarly discussion of the legislative history of the occupational license tax laws fails to persuade the Court that the history of the legislation has any bearing at all on the legislative intent to tax branches of real estate brokerage businesses. The fact remains that Section 345 is `clear and free from all ambiguity'; therefore, `the letter of it is not to be disregarded, under the pretext of pursuing its spirit'. LSA-C.C. Art. 13.
* * * * * *
"Plaintiff cites several cases as dispositive of the issue of whether real estate brokerage businesses should be taxed on the occupation as a whole and not as to each separate office. This Court does not view the narrow issues presented in any of these cases as dispositive of the issue raised by plaintiff's suit.
"In Guillot v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857 (S.Ct., 1918), the Supreme Court refused to apply the predecessor of Section 345 to banks and held that, since the section applicable to banks based its tax on capital only, a single tax was due. Plaintiff would use this holding by analogy to reach the same result with real estate brokerage businesses, since neither section (R.S. 47:346 for banks and R.S. 47:348 for real estate brokers) has a paragraph levying the tax on separate places of business.
"This Court agrees with defendant that there can be no analogy between the banking business and the real estate brokerage business. In the banking business the tax is based on total declared capital of the bank; in the real estate brokerage the tax is based on gross annual commissions earned for services performed. Whereas, each separate branch of a bank has no capital of its own, commissions may be earned by either the main office or any branch office. The language, `It is evident. . . that the words "each business" are thus used in the sense of "each occupation" in the Central Bank decision [79 So.] at 859, only supports the conclusion that banks are to be taxed as a whole because of the basis adopted by the legislature in fixing the amount of licenses for banks. The language of the decision supports no general conclusions as to other categories of businesses.
"Next, plaintiff cites State v Norman Mayer & Co., 170 La. 337, 127 So. 743 (S.Ct., 1930), for the proposition that the predecessor statute of Section 345 did not apply to the cotton factorage and commission business, a business taxed in the same section of that statute as were real estate brokerage businesses. It is the opinion of this Court that the business involved in Norman Mayer was taxed as an `occupation' simply because the Court found the only purposes of the `branch' office were to take orders and to disburse information. The Court indicated that it would tax separate places of business under different facts than those involved. `To be subject to the tax, it must appear that the agent or agency was engaged in the conduct of a local cotton factorage or commission brokerage business.' State v Norman Mayer, Id.
"This Court believes that Norman Mayer cannot be cited as applying the `occupation' label to all cotton brokerage businesses, no *648 matter what the facts of the particular situation, much less as applying the `occupation' label to all brokers including real estate brokers mentioned in the old statute.
"Plaintiff's third argument is that Section 345, if read literally, applies not to separate `places of business', but rather to separate `classes of business at each place'. This argument has no merit because the section literally requires that `any person taxed under this Chapter having one or more places of business shall pay a separate license for each class of business at each place', (emphasis added).
"Plaintiff contends the section is at least ambiguous because there is no reason for so many sections subsequent to Section 345 to contain separate `place of business' language if Section 345 is not a `class' rather than a `place' tax. Plaintiff contends that since the section is ambiguous, the ambiguity must be decided in the taxpayer's favor. Plaintiff overlooks the fact that there are numerous other sections dealing with specific businesses which contain no separate `place of business' language. Unlike plaintiff, this Court would not have to `give the Legislature credit for not duplicating that which the State would have us believe is obviously universal in this application'.
"Finally, plaintiff cites two cases dealing with city occupational license taxes. In City of New Orleans v. W. Horace Williams Co., 212 La. 831, 33 So.2d 653 (S.Ct., 1947) the court held that jobs done outside the city were not separate businesses within the contemplation of the occupational license tax law. In City of Hammond v. Orkin Exterminating Co., Inc., 248 So.2d 25 (1st Cir. [La.App.], 1971) the court held that spraying of insecticide in homes outside the city were not separate businesses.
"Rather than bolster plaintiff's argument, these cases exemplify that the courts will look to each factual situation to determine whether a particular operation is truly a `separate place of business'. In reaching this determination the courts may be guided by past cases. For example, in Murrel v. Brokenfohr, 108 La. 19, 32 So. 176 (S.Ct., 1902), in finding that a warehouse was a separate place of business, the Supreme Court used this language:
`The practical effect of this is to localize the business, and to get a profit from another branch of industry, distinct and separate from the home office of defendant's business.'
and this language [32 So.] at 177:
`We understand that the business subject to license tax is a commercial enterprise; that it is a business for profit.'
"In State v. Norman Mayer & Co., supra [127 So.] at 743, in finding that an office was not a separate place of business, the Supreme Court used this language:
`To be held subject to the tax, it must appear that the agent or agency was engaged in the conduct of a local cotton factorage or commission brokerage business.'
"In S. Zemurray & Co. v. Town of Franklin, 134 La. 803, 64 So. 719 (S.Ct., 1914), the business of selling bananas from freight cars was held subject to a license tax. Justice Land held:
`From the admitted facts, it appears that the plaintiff was engaged in the business of selling bananas at wholesale in the town of Franklin just as effectually as if it had a branch establishment in that place. Plaintiff owes a license for each and every branch of its business. See Sheriff and Tax Collector v. Brokenfor [Brokenfohr], 108 La. 19, 32 South. 176.'
"This Court believes that the absence of language expressly evidencing the intent to tax separate places of business in R.S. 47:348 does not indicate the legislative intent to exempt real estate brokers from the general application of R.S. 47:345. It is the opinion of this Court . . . that the determination of whether a real estate brokerage firm's branch office is a `separate place of business' within the contemplation of R.S. 47:345 should be made on a case by case basis, using prior cases for guidance.
"It appears that the branch offices of plaintiff are engaged locally in the conduct of real estate brokerage throughout the metropolitan *649 New Orleans area. Regardless of whether they are conveniences for plaintiff's customers, they appear to be commercial enterprises endeavoring to make a profit for Gertrude Gardner, Inc. Regardless of whether they offer less services and perform fewer operations than the main office, they are staffed by agents who initiate and conclude major aspects of the real estate brokerage business. Regardless of whether their accounting and expenses are handled from the main office, customers availing themselves of their services would be able to consummate real estate business to the same extent as they would with many other real estate brokerage firms. For these reasons, this Court is of the opinion that Gertrude Gardner's branch offices are `places of business' within the contemplation of R.S. 47:345."
The case of Morgan & Lindsey, Inc. v. Louisiana State Board of Health, 169 So.2d 560 (La.App. 4th Cir. 1964), cited by plaintiff to this court in support of its position, is not controlling in the instant case for the reason that that case dealt with La.R.S. 40:1203(G) of the Public Health and Safety Act and Title 40 contained no section similar to La.R.S. 47:345.
Further, a fair construction of La. R.S. 47:345 compels the conclusion that a separate license tax is thereby imposed upon any person who has one or more businesses within the same class as well as upon any person who has one or more businesses of different classes. Even if we were to concede, arguendo, that La.R.S. 47:345 is ambiguous in this respect, the title to the section removes any doubt as to the intent of the Legislature. The title thereof recites: "Separate license required for each location and each class of business."
With respect to assignment of error number 4 we agree with appellant that "`Statutes and ordinances imposing license and business taxes must be construed strictly in favor of the citizen and against the government * * * License laws cannot be extended by construction, omissions cannot be supplied by the Courts, and no license-tax can be exacted which is not imposed by the words of the statute or ordinance.' "State v. Norman Mayer & Co., 170 La. 337, 127 So. 743 (1930). These principles, however, do not prohibit the courts from inquiring into the facts to determine whether a particular location or office falls within the definition of "place of business", which is taxable under the expressed provisions of the statute.
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.